**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE: APPLICATION PURSUANT TO 28 U.S.C. § 1782 OF MICHAEL PAGE DO BRASIL LTDA.** | **Civil Action No. 17-4269 (KM)**<br><br>**REPORT AND RECOMMENDATION** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on three motions: (1) a motion by Petitioner Michael Page do Brasil Ltda. ("Michael Page" or "Petitioner") seeking the entry of an Order pursuant to 28 U.S.C. § 1782 granting leave to serve a subpoena on Respondent Robert Half International Inc. ("Robert Half" or "Respondent") [Dkt. No. 2], which is opposed by Respondent [Dkt. No. 10]; (2) a motion by Petitioner to seal several documents filed in this matter and to proceed anonymously [Dkt. No. 1], which is unopposed; and (3) a motion by Respondent to strike certain exhibits to the reply brief filed by Petitioner in support of its discovery application [Dkt. No 16], which is opposed by Petitioner [Dkt. No. 23]. For the reasons set forth below: (1) it is respectfully recommended that Petitioner's application for discovery pursuant to 28 U.S.C. § 1782 [Dkt. No. 2] be **DENIED**; (2) Petitioner's motion to seal and proceed anonymously [Dkt. No. 1] is **DENIED**; and (3) is it respectfully recommended that Respondent's motion to strike [Dkt. No. 16] be **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

Michael Page is a professional recruitment firm with an office located in Sao Paulo, Brazil, which "specializes in the placement of candidates in . . . employment positions with its employer-clients throughout Brazil." Dkt. No. 2-8 at p. 3. Respondent is also a professional recruitment firm

and a direct competitor of Petitioner which operates internationally and maintains an office in Brazil operated by its subsidiary Robert Half Trabalho Terporario Ltda. ("Robert Half Brazil"). Petitioner's claims against Respondent and its subsidiary arise from Petitioner's allegation that Respondent, in an effort to access and misappropriate Petitioner's confidential business information, planted malware (the "Malware") into the source code of Petitioner's website sometime between 2006 and 2008. *See* Dkt. No. 2 ("Application"). Petitioner alleges that the Malware altered the source code of Petitioner's website to allow unauthorized access to non-public information contained on Petitioner's website through the use of certain computer command codes. *Id.* at ¶ 22.

According to Petitioner, the alleged unauthorized access to its website came to its attention when Petitioner's employee, Juan Pablo Correa Santa, who had previously been employed by Respondent, informed Petitioner that Respondent's employees "had readily accessed confidential information through Petitioner's website by using special computer command codes to access Petitioner's website and the confidential identities of Petitioner's employer-clients so that [Respondent] could use the confidential information to target Petitoner's clients . . . ." *Id.* at ¶ 21. Petitioner believes that the Malware was developed and implemented by its former employee Alexandre Arima, who left Petitioner and began working for Respondent in December 2007. *Id.* at ¶ 20. For part of his employment with Petitioner, Mr. Arima served as Petitioner's webmaster and had unrestricted access to Petitioner's network and servers. *Id.* at ¶ 19.

Upon being informed by Mr. Santa of Respondent's alleged actions, Petitioner commenced an internal investigation to determine whether its website had been improperly accessed. *Id.* at ¶ 22. In addition to discovering the Malware, Petitioner's internal investigation revealed "an unusually high number of visits to its website" originating from Internet Protocol ("IP") addresses

registered to Respondent. *Id*. According to Petitioner, a review of all visits to its website originating from Respondent's IP addresses revealed that those visits "targeted and consulted webpages where Petitioner's confidential data was being improperly revealed." *Id.* at ¶ 25. Petitioner contends that the frequency of the visits to Petitioner's website originating from Respondent's IP addresses and the content of webpages that were being accessed during those visits evidence Respondent's intent to misappropriate Petitioner's confidential business information.

Based upon these contentions, in January of 2009, Petitioner commenced a legal proceeding against Robert Half Brazil and Mr. Arima in the 13th Civil Court of the Central Forum of the District of the State Capital of Sao Paulo (the "Search and Seizure Action"). *Id.* at ¶ 27. The Search and Seizure action sought relief in the form of the procurement of evidence which would substantiate Petitioner's claims against Respondent. The court in the Search and Seizure action appointed an independent information technology ("IT") expert, Dr. Raul Spiguel, to seize and evaluate any relevant evidence. *See* Dkt. No. 2, Ex. E.

On February 6, 2009, Brazilian court officials executed warrants at the offices of Robert Half Brazil and at the home of Mr. Arima without having provided any prior notice. *Id.* at p. 4-5. The Robert Half Brazil offices contained approximately seventy-two computers and two small servers.  *Id.* at p. 6. The investigators accessed and searched the computers and servers in the Robert Half Brazil offices but were unable to access certain data because the computers were configured to connect to Respondent's servers in the United States instead of utilizing local hard drives. *Id.* at p. 8. Although certain data could not be accessed, the investigators were able to determine that the computers in the Robert Half Brazil officers connected to the interest using two IP addresses owned by Respondent. *Id.* at p. 9. The two IP addresses used by Robert Half Brazil's

computers matched two of the IP addresses listed in Petitioner's Complaint in the Search and Seizure Action. *Id.*

Once the search of the computers was completed, the investigators accessed and searched Mr. Arima's laptop computer. *Id.* at p. 10. Although Mr. Arima's laptop was likewise configured to store certain data on Respondent's main server in the United States, Mr. Arima also utilized a local hard drive which allowed the investigators to access all of the data stored on Mr. Arima's laptop. *Id.* at p. 12. The investigators seized Mr. Arima's laptop as well as a second laptop located in the company director's room. *Id.* The simultaneous search of Mr. Arima's home resulted in the seizure of internal hard drives from Mr. Arima's personal desktop computer and laptop computer and an external hard drive. *Id.* at p. 16-17

After the initial searches of Robert Half Brazil's offices and Mr. Arima's home were completed, the Brazilian court appointed a second expert, Dr. Dante Grasso Junior, to examine the data obtained by the investigators and prepare a "final report" based upon that review. *See* Dkt. No. 2, Ex. F. Dr. Grasso's report did not find any proof that Respondent or Mr. Arima had installed the Malware or accessed Petitioner's confidential information. *See Id.* The Brazilian court approved Dr. Grasso's findings and the Search and Seizure Action was closed on August 17, 2015. Dkt. No. 2, Ex. G.

On May 18, 2017, Petitioner commenced a second action asserting claims against Respondent, Robert Half Brazil and Mr. Arima for unfair competition and related claims based upon the same allegations set forth in the Search and Seizure Action (the "Underlying Action"). *See* Dkt. No. 2, Ex. B. On June 13, 2017, prior to serving Respondent with notice of the Underlying Action, Petitioner filed the present application seeking discovery from Respondent in connection with the Underlying Action pursuant to 28 U.S.C. § 1782 (the "Application").

III.    **DISCUSSION**

**A. Petitioner's Application for Discovery Pursuant to 28 U.S.C. § 1782 [Dkt. No. 2]**

The Application requests leave to serve Respondent with a subpoena (the "Subpoena") seeking production of documents and a Federal Rule of Civil Procedure 30(b)(6) deposition of Respondent's corporate representative. *See* Dkt. No. 2, Ex. A ("Subpoena"). The Subpoena seeks information related to Petitioner's allegations that Respondent and its employees misappropriated Petitioner's confidential business information through the unauthorized access of Petitioner's website. The requests in the Subpoena seek a wide range of information including the identities of all individuals who connected to the internet using Respondent's IP addresses during the relevant period, the internet browsing history of all such individuals, and all electronic communications between those individuals.

In support of the Application, Petitioner claims that absent aid pursuant to § 1782, it will be unable to obtain the information it seeks because the relevant evidence is in the possession, custody and control of Respondent and resides in the United States. Petitioner contends that its Application is the "only viable way" to obtain the necessary evidence and that the Subpoena is narrowly tailored to seek only information relevant to its claims against Respondent in the Underlying Action. Dkt No. 2-8 at p. 2. In opposition to the Application, Respondent claims that Petitioner is seeking to circumvent the Brazilian judicial process by pursuing discovery via the present Application that Brazilian courts have declined to make available. Respondent further asserts that Petitioner's discovery requests are extremely overbroad and burdensome.

Pursuant to 28 U.S.C. § 1782(a), "[t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the

application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court." A district court is authorized to grant an application under § 1782 if the following three statutory requirements are met:

> (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person.

*In re Application of Microsoft Corp.,* 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006).

The Court finds that the Application satisfies the statutory requirements. First, according to Petitioner and undisputed by Respondent, Respondent is a Delaware corporation with numerous offices in the United States, including eight offices in New Jersey. Second, the discovery sought by the Application is for use in the Underlying Action, which undisputedly qualifies as a proceeding before a foreign tribunal. Third, as a party to the Underlying Action, Petitioner qualifies as an interested person.

If the statutory requirements are met, a district court may, in its discretion, grant the application. "May," of course, is not "must"—"a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (citing *United Kingdom v. United States,* 238 F.3d 1312, 1319 (11th Cir.2001)). Rather, "[w]hether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court." *United Kingdom,* 238 F.3d at 1318–19. The Supreme Court has identified four discretionary factors that the district court can consider when ruling on a § 1782 request:

> (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the § 1782 application contains unduly intrusive or burdensome discovery requests.

*Intel Corp.*, 542 U.S. at 247. In deciding whether to grant an application made under § 1782, courts must be mindful of the "twin aims" of the statute: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252 (citations omitted).

Beginning with the first discretionary factor, the Court looks to whether the "person from whom discovery is sought is a participant in the foreign proceeding." *Id.* at 264. The Supreme Court has explained that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* (citations omitted). On the other hand, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Id.* (citation omitted).

Although the case law at times refers to whether the "person" is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceeding. *In re Application of Ooo Promnefstroy,* 2009 WL 3335608, *5 (S.D.N.Y. Oct.15, 2009) ("it is the foreign tribunal's ability to control the evidence and other production, not the nominal target of the § 1782 application, on which the district court should focus"); *see also In re*

*Microsoft Corp.,* 428 F. Supp. 2d at 194 ("The relevant inquiry is whether the evidence is available to the foreign tribunal"); *In re Ex Parte LG Electronics Deutschland GmbH,* 2012 WL 1836283, *2 (S.D. Cal. May 21, 2012) (finding the first factor weighed against allowing § 1782 discovery even though subpoena was directed to a non-party to the foreign proceeding because the information sought could be obtained from a party to the foreign proceeding).

"This factor militates against allowing § 1782 discovery when the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity." *In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015) (Citing *Schmitz,* 376 F.3d at 85 ("Although technically the respondent in the district was [the foreign counter-party's law firm], for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation"); *In re Kreke Immobilien KG,* 2013 WL 5966916, *5 (S.D.N.Y. Nov. 8, 2013) (denying discovery sought from parent company under § 1782 when subsidiary company was participant in foreign proceeding because, *inter alia,* "the notion that [the parent company] could somehow be a nonparticipant in the foreign action is untenable")).

In the present matter, Respondent is a party to the Underlying Action, which Respondent argues weighs against granting the Application. Although it is undisputed that Respondent is a party to the Underlying Action, Petitioner states that the discovery it seeks is not within the jurisdictional reach of the Brazilian court because the Underlying Action is "a claim for damages, the procedural posture of which does not provide the parties with a mechanism through which Petitioner can obtain from Respondent discovery that is located in the United States." Dkt. No. 15-2, Abrusio Decl. at ¶ 8.

Initially, the Court notes that although the parties have submitted competing affidavits regarding the applicable Brazilian law, the Court is not required to, and is in fact cautioned against, undertaking any extensive analysis of the applicable Brazilian law or making findings as to the accuracy of the parties' characterizations of such laws. *See Euromepa, S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1099 (2d Cir. 1995) ("The record reveals that this litigation became a battle-by-affidavit of international legal experts .... [W]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges."); *see also In re Application of Gemeinschafts-Praxis Dr. Med.Schottdorf,* No. Civ. M19-88, 2006 WL 3844464 *7 (S.D.N.Y., Dec. 29, 2006) ("[T]he Court is not expected to declare a winner in this 'battle-by-affidavit of international legal experts'") (quoting *Euromepa,* 51 F.3d at 1099)).

Although the Court declines to make any findings as to the correctness of Petitioner's assertions regarding Brazilian law, Petitioner's own carefully worded characterization of Brazilian law gives the Court pause in finding that the first factor weighs in favor of granting the Application. First, as discussed more fully below in the Court's analysis of the third discretionary factor, if the procedural posture of the Underlying Action does not contemplate an exchange of discovery between the parties, then an attempt to gain such discovery here could be seen as an attempt to sidestep the procedure of the Brazilian court. Secondly, Petitioner does not contend that the Brazilian court lacks jurisdiction over Respondent or the relevant evidence, and while Petitioner claims that there is no mechanism by which it can compel discovery from Respondent, it is unclear whether the Brazilian court itself can compel such discovery. *See In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (declining to find that a petitioner's inability to compel the requested discovery in the foreign tribunal weighs in favor of granting a § 1782 application where the tribunal itself may be able to order such discovery). Despite the Court's

misgivings regarding Petitioner's argument that the discovery sought by the Application cannot be obtained through the Underlying Action, because there is no definitive proof from the parties in this respect, the Court finds the first factor to be neutral.

The second discretionary factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel Corp.,* 542 U.S. at 264. A foreign tribunal's willingness to accept evidence obtained through the section 1782 process generally weighs in favor of granting such petitions. *See In re Application of OOO Promnefstroy*, 2009 WL 3335608, at *7–8. As previously stated, in evaluating a tribunal's willingness, courts "do not believe that an extensive examination of foreign law regarding the existence and extent of discovery in the forum country is desirable in order to ascertain the attitudes of foreign nations to outside discovery assistance." *In re Application of Euromepa,* 51 F.3d at 1099; *see also Intel Corp.,* 542 U.S. at 263 ("[Section 1782] does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here. Comparisons of that order can be fraught with danger."). Rather, "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Application of Euromepa,* 51 F.3d at 1100.

In support of its Application, Petitioner contends that the Brazilian court will "most assuredly be receptive to the evidence requested by the Subpoena" because it seeks evidence "expressly acknowledge[d]" to be relevant by the Brazilian court in the Search and Seizure Action. Dkt. No. 2-8 at p. 22-23. Although the Court is unconvinced by Petitioner's argument that the Brazilian court in the Underlying Action will be unquestionably receptive to the evidence sought based upon its noted absence during the Search and Seizure Action and has considered the opinion

of Respondent's legal expert that the Brazilian court may be skeptical of Petitioner's present Application, Respondent does not present any authoritative proof that the discovery sought would be rejected. Accordingly, in the absence of clear proof that the Brazilian court would refuse the discovery sought by Petitioner, the Court finds this factor to be neutral.

The third factor examines whether the Application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.,* 542 U.S. at 264–65. Courts have "refused to engraft a 'quasi-exhaustion requirement' onto section 1782 that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court." *In re Application of Euromepa,* 51 F.3d at 1098 (quoting *In re Malev Hungarian Airlines,* 964 F.2d 97, 100 (2d Cir. 1992)). Nonetheless, "the district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction." *In re Application of Babcock Borsig AG,* 583 F. Supp. 2d 233, 241 (D. Mass. 2008). "A perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in the court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2013 WL 183944, *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Application of Caratube Int'l Oil Co.,* 730 F. Supp. 2d 101, 107–08 (D.D.C. 2010)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Application of Gilead Pharmasset LLC,* 2015 WL 1903957, *4 (D. Del. Apr. 14, 2015) (quoting *In re IPC Do Nordeste, LTDA,* 2 012 WL 4448886, *9 (E.D. Mich. Sept. 25, 2012)).

Petitioner claims that the Application does not represent an attempt to circumvent any Brazilian proof-gathering restrictions because the Subpoena "seeks to provide information that the Brazilian court-appointed expert already deemed relevant, but unobtainable [in the Search and Seizure Action] because the evidence resides in the United States." Dkt. No. 2-8 at p. 27.

According to Petitioner, the evidence is sought in "good faith as a supplemental method of obtaining relevant documents that are fully expected to be introduced into the [Underlying Action] as evidence, which although likely admissible, have been impossible to obtain in Brazil because the evidence resides in the United States." *Id.* at p. 28. Petitioner further contends that in the absence of any Brazilian law expressly precluding the discovery sought, the Application cannot be seen as an attempt to circumvent discovery restrictions in the Underlying Action. In opposition to the Application, Respondent argues that Petitioner is attempting to evade Brazilian procedures and is improperly using the Search and Seizure Action, which concluded without any finding of wrongdoing by Respondent, to justify a fishing expedition and "serve discovery that is considered extraordinary under Brazilian law." Dkt. No. 10 at p. 10.

The Court first addresses Petitioner's attempt to justify the present Application by citing to the Search and Seizure Action. Petitioner claims that the Brazilian court would undoubtedly be receptive to evidence sought and produced via the Application because it was "deemed relevant" and found to be unobtainable during the Search and Seizure Action. Based upon the information provided by both parties, the Search and Seizure Action and the Underlying Action are separate and procedurally distinct actions and Petitioner has provided no proof in support of its assertion that the acknowledgment of the presently sought information relating to the Search and Seizure Action somehow renders that information permissible in the context of the Underlying Action.

Next, the Court turns to Petitioner's overarching argument that the evidence presently sought can only be obtained via § 1782 assistance based upon the Brazilian court's inability to access such evidence by virtue of its location in the United States. While the evidence contained on Respondent's servers in the United States was unavailable in the Search and Seizure Action because Respondent was not a party thereto, Petitioner subsequently instituted the Underlying

Action naming Respondent. Therefore, any observations as to the inability to obtain evidence from Respondent as a non-party in the Search and Seizure Action are inapplicable in the context of the Underlying Action in which Respondent has been named as a party.

While Petitioner argues that the documents sought are impossible to obtain in Brazil because the evidence resides in the United States, Petitioner has provided no argument or proof in support of the assertion that Brazilian courts are unable to obtain discovery from parties to actions before them by virtue of such discovery being located in the United States. It is presumed that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce the evidence." *Intel Corp.,* 542 U.S. at 264. In the absence of evidence to rebut that presumption, the Court finds Petitioner's argument to be unavailing.

Finally, the Court addresses Petitioner's erroneous contention that a finding under the third factor requires proof that the discovery sought by the Application would be precluded under Brazilian law. Contrary to Petitioner's assertion, the inquiry is not whether the requested discovery would be precluded under Brazilian but rather whether the Application represents an attempt to sidestep the Brazilian court's control over the proceedings in front of it. While there is indeed no definitive proof that the discovery sought would be rejected by the Brazilian court or barred under Brazilian law, at least at the present juncture, it appears to the Court that the Application does indeed represent an attempt to bypass the procedure of the Brazilian court and embark upon an expansive fishing expedition.

As previously noted, one of the aims of § 1782 is efficiency. *Intel Corp.,* 542 U.S. at 252. Following the Search and Seizure Action in which Petitioner was unable to access Respondent's servers located in the United States, Petitioner instituted the Underlying Action and named Respondent. Because Petitioner does not dispute that Respondent is a party to the Underlying

Action or claim that the Brazilian court is unable to obtain evidence in Respondent's possession in connection with the Underlying Action, Petitioner's actions in turning to this Court to acquire information "for use in a case pending in a Brazilian court is not an efficient manner of gathering information in the possession of [a party to that case]." *In re IPC Do Nordeste, LTDA, For an Order Seeking Discovery Under 28 U.S.C. 1782*, No. 12-50624, 2012 WL 4448886, at *7 (E.D. Mich. Sept. 25, 2012).

The present circumstances stand in contrast to § 1782 applications which seek necessary evidence from a party to the foreign action that is unobtainable by the foreign tribunal as a result of proof gathering restrictions governing the tribunal. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011). In *Kulzer*, the petitioner, a plaintiff in a lawsuit in Germany, sought discovery via a § 1782 application from a defendant in the German action. *See Id.* The evidence could not be obtained in the German action because the applicable procedure only allowed parties to request documents they could identify specifically and did not permit demands for categories of documents, which precluded the petitioner from obtaining necessary and relevant discovery and necessitated § 1782 aid. *Id.* at 596. Here, unlike in *Kulzer*, Petitioner is seeking discovery from Respondent, a party to the foreign action, without any demonstration that the discovery sought would be unavailable to the foreign tribunal absent § 1782 aid.

Petitioner's actions in filing the present Application seeking expansive discovery from Respondent before even serving Respondent with process in the Underlying Action and without any demonstration that the evidence would be unavailable to the Brazilian court certainly violate § 1782's express policy of providing efficient assistance to foreign tribunals. *Nordeste,* 2012 WL 4448886, at *7 (citing *Intel Corp.,* 542 U.S. at 252). In a situation such as this where the party from whom discovery is sought is a party to the foreign action and there has been no attempt to

14

obtain the relevant evidence in the foreign tribunal or any demonstration that such evidence is unavailable to the foreign tribunal, the Court is left with the impression that there must be some "reason that [the petitioner] is seeking the information in [the United States] rather than in [the foreign tribunal]" . . . because rational actors do not needlessly increase their own litigation costs" by pursuing discovery via a § 1782 application which is in the possession of a party to the foreign action and which has not been shown to be unobtainable by the foreign tribunal. *Id.*

While Petitioner's efforts to seek discovery in the United States are certainly inefficient, it also appears to the Court that the Application represents an attempt by Petitioner to circumvent the proof-gathering restrictions of the Brazilian court. Although there is no exhaustion requirement under § 1782, Petitioner has not even attempted to obtain any discovery in the Underlying Action nor has Petitioner provided any convincing explanation as to why necessary discovery could not obtained therein. *See In re Application of Gilead Pharmasset LLC*, 2015 WL 1903957, at *5 (finding that a petitioner's "lack of interest in pursuing any discovery under the laws of the [foreign tribunal] . . . indicates an attempt to circumvent those rules). Petitioner commenced the Underlying Action naming Respondent and has failed to demonstrate that the evidence necessary to pursue its claims is unavailable to the Brazilian court should it choose to permit such evidence. Accordingly, because Petitioner has failed to demonstrate any efforts whatsoever to obtain discovery in the Underlying Action, it appears to the Court that the Application represents an attempt to circumvent the restrictions and procedures of the Brazilian court. Therefore, the Court finds that the third factor weighs against Petitioner.

Finally, under the fourth factor, a district court may consider whether an application contains "unduly intrusive or burdensome requests," *Intel Corp.,* 542 U.S. at 265, is "made in bad faith, for the purpose of harassment," *Euromepa S.A.,* 51 F.3d at 1101 n. 6, or is part of a "fishing

expedition," *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on a different ground by Intel Corp.,* 542 U.S. at 259. Courts may either reject an application as unduly intrusive or burdensome or may limit the scope of discovery in order to protect the person from whom discovery is sought. *In re Mesa Power Grp., LLC*, No. CIV.A. 2:11-MC-280-E, 2012 WL 6060941, at *7 (D.N.J. Nov. 20, 2012) (citing *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil,* 466 F.Supp.2d 1020, 1032 (N.D. Ill. 2006)). This factor requires courts to look at the entire discovery request and determine whether it is unduly intrusive or burdensome. *Id.* While a court may modify a subpoena to comply with Rule 26, "it is under no obligation to do so." *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 87 (3d Cir. 2016) (citing *Intel Corp.,* 542 U.S. at 265). "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).

In opposition to the Application, Respondent claims that Petitioner's discovery requests are vastly overbroad, seek information not relevant to the Underlying Action and that compliance with the Subpoena would be extraordinarily burdensome. In response, Petitioner argues that the discovery sought is relevant, reasonably tailored and proportional to the needs of the Underlying Action. Petitioner further contends that even if the Court determines that some of its requests are outside the scope of permissible discovery, "the appropriate remedy would not be to deny the Application or otherwise quash the Subpoena" but instead for the Court to modify the Subpoena. Dkt. No. 15 at p. 13.

It is undeniable that the discovery sought by the Subpoena is expansive. Before reviewing Petitioner's discovery requests, it is necessary to note Petitioner's use and definition of "Responsible Users", which is defined in the Subpoena as:

> Any person(s) or thing(s) . . . who accessed or attempted to access Michael Page's website . . . through Robert Half IP addresses from on or about January 1, 2008 to on or about February 28, 2009."

Subpoena at 1.

Schedule A of the Subpoena seeks a 30(b)(6) deposition of Respondent's corporate representative on sixteen topics, including the "use" of certain of Respondent's IP addresses from January 1, 2008 to February 28, 2009, the "identity and conduct" of persons or things who accessed Petitioner's website from Respondent's IP addresses during the same time period, Responsible Users' use of virtual private networks, Responsible Users' internet browsing history, the internet browsing history of three specific Robert Half employees, electronic devices used by Responsible Users, and electronic communications concerning information obtained through the website by Responsible Users. Subpoena at Schedule A. Schedule B of the Subpoena seeks an immense document production corresponding to the deposition topics set forth in Schedule A. Subpoena at Schedule B. For example, Request No. 1 of Schedule B of the Subpoena seeks:

> Documents sufficient to identify all Responsible User[s], including without limitation: Responsible User(s)' complete personal data records, including legal name, user name, address and any other contact information, email address . . . IP address, and any other identifying characteristics or personally identifiable information.

Subpoena, Schedule B at 1.

Although it appears that Petitioner has attempted to present its requests as narrowly tailored by seeking only such information as relates to Responsible Users, the mere process in identifying such users would require Respondent, a multinational company, to review data and internet

browsing history from almost a decade ago of every person or "thing" over a year-long period to determine whether any of those persons or things accessed Petitioner's website. Even if Respondent were to complete such a process and identify the Responsible Users, which it claims it cannot because it no longer possesses records of its employees' internet browsing histories from 2008-2009, Respondent would still face the arduous task of responding to the Subpoena's requests. As an example, were Respondent to identify Responsible Users, to respond to Petitioner's requests for the emails of those users would require a review of over 2 billion emails and 150 terabytes of data, which can only be filtered by the name of the sender or receiver or the date of the communication and cannot be searched using keywords or search terms. *See* Dkt. No. 10-3, Williams Decl. Even to respond to Petitioner's requests for the electronic communications of the three specifically identified individuals would require a manual review of approximately 2,182,851 emails sent by those individuals during the relevant time period. *Id.* at ¶ 9.

While Petitioner asserts that its discovery requests are narrowly tailored and proportional to the needs of this case, the Subpoena's extensive and indiscriminate requests appear to be a fishing expedition which would cause Respondent to suffer a significant burden not justified by the needs of this case at the present juncture. The Search and Seizure Action concluded without any finding of wrongdoing by Respondent and the mere fact that that the conclusion of the Search and Seizure Action noted the inaccessibility of Respondent's data stored in the United States does not provide a reasonable justification for wholesale discovery into the personal information, internet browsing history and electronic communications of every Robert Half employee who may have accessed Petitioner's competing website almost a decade ago. This is especially true in light of Petitioner's failure to make any attempt to obtain discovery in the Underlying Action. While the Court may modify the Subpoena to comply with Rule 26, no such action is required and the

Court will not exercise its discretion to do so in the present situation where the discovery requests are almost universally and unjustifiably burdensome and intrusive. Accordingly, the Court finds that the fourth factor weighs against the Application.

Based upon the foregoing, although the statutory factors are met, the Court finds that the discretionary factors weigh heavily against granting the Application. The Subpoena seeks expansive and burdensome discovery from Respondent which does not appear to be justified by the needs of the Underlying Action, at least at the present time, and Petitioner's failure to even attempt to obtain the necessary discovery in the Underlying Action leaves the Court with the impression that the present Application is an attempt to side-step less than favorable discovery rules and procedures in the Brazilian court. Accordingly, it is respectfully recommended that Petitioner's Application for discovery pursuant to § 1782 [Dkt. No. 2] be **DENIED.**

### B. Petitioner's Motion to Seal and Proceed Anonymously [Dkt. No. 1]

Although filed as a single motion, Petitioner's motion seeks two separate forms of relief. First, Petitioner seeks to seal any and all docket entries which contain its identity or information it believes to be confidential. Secondly, Petitioner requests that the identities of both parties be sealed and that both Petitioner and Respondent proceed using pseudonyms. Because these two forms of relief are separate requests governed by differing legal standards, the Court will address them as individual requests.

### i. Motion to Seal

Plaintiff's motion requests that the Application, attached exhibits, and "any further filings implicating the [Underlying Action] (as defined in the Application) . . . be filed under seal without further application to the Court." Dkt. No. 1-3. In support of its request, Petitioner claims that because the Underlying Action has been sealed, any reference to that action in the documents filed

by the parties in connection with the present Application should also be sealed. Respondent has not opposed Petitioner's request.

It is well established that there is "a common law public right of access to judicial proceedings and records." *In re Cendant, Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). In order to overcome the presumption of a public right to access, the movant must demonstrate that "good cause" exists for the protection of the material at issue. *Securimetrics, Inc. v. Iridian Technologies, Inc.*, 2006 U.S. Dist. LEXIS 22297at *2, 2006 WL 827889 (D.N.J. Mar. 30, 2006). Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." *Id.* (*citing Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). In this district, motions to seal are governed by Local Civil Rule 5.3. Under Rule 5.3, "[a]ny motion to seal or otherwise restrict public access . . . shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(2).

First, the Court addresses Petitioner's initial request that every filing implicating the Underlying Action be sealed without further application to the Court. In addressing motions to seal, "[t]he Court must determine whether the sensitivity of the information meets the high burden of sealing under the conditions of [the] case as they currently exist" and therefore, Petitioner's request to seal documents which may or may not be filed in the future is **DENIED**. *Emmanouil v. Roggio*, 2007 WL 1174876, at *3 (D.N.J. Apr. 19, 2007). If there are documents in this matter which Petitioner wishes to be maintained under seal, Petitioner must file a motion identifying each

document it seeks to seal and establishing the need for sealing each particular document pursuant to Rule 5.3.

As to Petitioner's request to seal the Application and certain exhibits attached thereto in their entirety, while the Court makes no finding as to whether such filings do in fact contain information qualifying for protection from public view, Petitioner has failed to demonstrate that its privacy interests could not be adequately served by a more narrowly tailored order sealing only filings and portions thereof which contain sensitive information. Upon review of the documents in this matter which have been filed under seal by the parties pursuant to Petitioner's request, it appears to the Court that there are many documents which could be redacted rather than sealed in their entirety. Accordingly, the Court finds that Petitioner's request to seal a majority of the documents in this matter in their entirety, including the Application, fails to meet the standards of Rule 5.3(c) because it is not the least restrictive alternative. *See, e.g., Houston v. Houston,* No. 08–5530, 2010 U.S. Dist. LEXIS 59028, at *4, 2010 WL 2522689 (D.N.J. June 14, 2010) (denying motion to seal where defendant failed to explain why "privacy needs could not be equally well served by sealing more narrowly tailored portions of the" documents); *Hershey Co. v. Promotion in Motion, Inc.,* No. 07–1601, 2010 U.S. Dist. LEXIS 43322, at *9, 2010 WL 1812593 (D.N.J. May 4, 2010) (denying motion to seal because a less restrictive alternative to sealing such as redaction was available); *Parkins v. Cont'l Airlines, Inc.,* No.: 2:10–CV–6165–ES–SCM, 2013 U.S. Dist. LEXIS 90176, 2013 WL 3285049 (D.N.J. June 26, 2013) ("A motion to seal should be denied if a court determines that a less restrictive alternative exists."); *Avaya Inc. v. Telecom Labs, Inc.,* No. 06–24902012 U.S. Dist. LEXIS 93686, *8–9 (D.N.J. July 6, 2012) ("[R]edation is preferable to sealing a document wholesale.").

Based upon the foregoing, Petitioner's motion to seal [Dkt. No. 1] is **DENIED without prejudice** to the filing of a renewed motion seeking to seal narrowly tailored portions of the filings in this matter in accordance with Rule 5.3. Any renewed motion to seal shall be filed within fourteen (14) days from the date of this document's filing and all documents currently maintained under seal in this action shall continue to be sealed pending the filing of a renewed motion or motions.

### ii. Motion to Proceed Anonymously

Petitioner claims that the Underlying Action has been designated as confidential by the Brazilian court because it involves "highly sensitive information" and therefore "automatically qualifies" Petitioner to proceed in the present action using a pseudonym. Dkt. No. 1 at ¶ 3, 5. Respondent does not oppose Petitioner's request. The only authority cited by Petitioner in support of its request is Local Civil Rule 5.3(a)(3), which states that Rule 5.3, which governs the sealing of documents in this district, "shall not apply to any materials or judicial proceedings which must be sealed or redacted pursuant to statute or other law." Rule 5.3, however, does not provide the standard for proceeding anonymously.

In order to preserve the presumptively public nature of judicial proceedings, Federal Rule of Civil Procedure 10(a) generally "requires parties to a lawsuit to [expressly] identify themselves in their respective pleadings." *Doe v. Megless,* 654 F.3d 404, 408 (3d Cir. 2011) (citing Fed. R. Civ. P. 10(a)), *cert. denied,* —— U.S. ——, 132 S.Ct. 1543, 182 L.Ed.2d 163 (2012). The "public nature of lawsuits" and the "public interest inherent" in the proceedings render "open and transparent proceedings imperative to equitable outcomes." *Lozano v. City of Hazleton,* 496 F. Supp. 2d 477, 505 (M.D. Pa. 2007), *aff'd in part, vacated in part by,* 724 F.3d 297 (3d Cir. 2013). Notwithstanding this requirement, courts have recognized that a party may, under limited

circumstances, proceed by way of pseudonym, particularly where disclosure of the litigant's identity creates a risk of "extreme distress or danger[.]" *Id.* Proceeding by pseudonym, however, constitutes the "unusual" exception to the presumptive openness of judicial proceedings. *Marcano v. Lombardi,* No. 02–2666, 2005 WL 3500063, at *3 (D.N.J. Dec. 20, 2005) (noting that proceeding by pseudonym is "by all accounts, an unusual procedure.") (citation omitted).

The Third Circuit has explicitly stated that in addressing a request to proceed anonymously, "the mere allegation that a litigant may suffer embarrassment and/or economic harm is not enough." *Megless,* 654 F.3d at 408 (citation omitted). Rather, a plaintiff must establish "'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Id.* Once a litigant has demonstrated a reasonable fear of severe harm, courts must then determine whether the "litigant's reasonable fear of severe harm outweighs the public's interest in open judicial proceedings." *Id.*

Here, Petitioner claims that a denial of its request to proceed anonymously will cause it to suffer "serious embarrassment and reputational harm, and inflict unnecessary and serious economic pain. . . ." Dkt. No. 1 at ¶. These asserted injuries of commercial embarrassment and financial harm have been expressly deemed insufficient to permit the use of a pseudonym. *Megless,* 654 F.3d at 408. Accordingly, because the Court finds that Petitioner has failed to make the necessary showing of a reasonable fear of severe here, the Court need not determine whether such harm outweighs the public interest in open judicial proceedings.

Finding that Petitioner has failed to make the requisite showing to proceed anonymously, the Court turns to Petitioner's argument that a designation of confidentiality by the Brazilian court automatically enties Petitioner to file the present Application under a pseudonym. Although the Court finds no reason to doubt that the Brazilian court did in fact allow the parties in the Underlying Action to proceed anonymously, Petitioner has failed to provide any authority in support of its

contention that the confidentiality designation should apply to the litigation of the Application in this Court. In the context of § 1782 applications, as previously noted, courts are cautioned to avoid construing foreign law. This caution extends to arguments regarding whether a confidentiality order entered by the foreign tribunal entitles a § 1782 to reciprocal confidentiality in the United States, and even where the foreign court has sealed the record or the identities of the parties before it, this Court need not attempt to determine whether the Brazilian court's sealing order "purport[s] to limit the principles of openness in U.S. courts under these circumstances . . . nor need the Court determine whether principles of comity should over-ride our domestic aversion to secrecy in our courts." *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d at 1034. Accordingly, because the Court finds that Petitioner has failed to meet the requirements to proceed anonymously or provide any support for its assertion that it should be permitted to do so based upon the sealing orders of the Brazilian court, Petitioner's motion to proceed anonymously is **DENIED**.

### C. Respondent's Motion to Strike [Dkt. No. 16]

Respondent's motion to strike requests that the Court strike Exhibit 1 to Petitioner's Reply Brief in support of the Application [Dkt. No. 15-1] and the Declaration of Juliana Abrusio Florencio also filed as an attachment to Petitioner's reply brief in support of the Application [Dkt. No. 15-2]. The Court will address each filing separately.

### i. Petitioner's Reply Brief, Exhibit 1 ("Exhibit 1")

Exhibit 1 consists of approximately nine pages of argument by Petitioner in support of its contentions that the scope of its discovery requests in the Subpoena are proper. Respondent claims that in violation of Local Civil Rule 7.2(b), which limits reply briefs to 15 pages, Petitioner filed a 15-page reply brief and attached Exhibit 1, which contains an additional nine pages of argument.

In opposition to Respondent's motion to strike, Petitioner claims that it did not intend to circumvent Rule 7.2(b)'s page limit and that Exhibit 1 was "intended to assist the Court if it were inclined to undertake a more thorough evaluation of [Petitioner's] discovery requests . . . ." Dkt. No. 23 at p. 1.

Upon review of Exhibit 1, it is clear that Exhibit 1 is indeed an impermissible nine pages of additional argument by Petitioner in support of its Application and was therefore filed in clear violation of the Local Civil Rules. Although Petitioner claims that in filing Exhibit 1 it did not intentionally violate Rule 7.2(b), Petitioner offers no convincing reason why Exhibit 1 should be considered by the Court.[1] Accordingly, is it recommended that Respondent's motion to strike [Dkt. No. 16] be **GRANTED** as to Exhibit 1.

### ii. Petitioner's Reply Brief, Abrusio Declaration

Juliana Abrusio Florencio is Petitioner's counsel in the Underlying Action. The Abrusio Declaration submitted by Petitioner with its reply brief contains Ms. Abrusio's opinions regarding applicable Brazilian law. *See* Dkt. No. 15-2. Respondent argues that the Abrusio Declaration should be stricken because Ms. Abrusio represents Petitioner in the Underlying Action, "rendering her interpretation of Brazilian law biased and unreliable." Dkt. No. 16 at p. 1. Although the Court is sympathetic to Respondent's position in this regard, it appears that the Abrusio Declaration was largely a response to the Declaration of Professor Flavio Luiz Yarshall filed by Respondent with its Opposition Brief to the Application and was not the product of any bad faith or improper motive on behalf of Petitioner. *See* Dkt. No. 10-2 ("Yarshall Decl.").

---

[1] Although Respondent's motion to strike Exhibit 1 is granted, in the interest of thoroughness, the Court has indeed reviewed Exhibit 1 and concluded that none of the arguments contained therein would cause the Court to change any part of its findings on the present issues.

As previously stated, in the context of a § 1782 application, the Court need not undertake any extensive analysis of the applicable foreign law. The present scenario demonstrates why undertaking such an analysis would place the Court in a precarious position. Petitioner and Respondent have both submitted declarations of individuals purportedly familiar with the applicable Brazilian law and each declaration renders a vastly differing opinion regarding the merits of the Application. Neither declaration presents authoritative proof dictating the outcome of the issues presently before the Court, and because such declarations are given very little weight, the Court does not see any harm in considering them. Furthermore, the mere fact that Ms. Abrusio represents Petitioner in the Underlying Action does not render her declaration improper. *See In re O'Keeffe*, No. 2:14-CV-01518-RFB, 2015 WL 1308546, at *5 (D. Nev. Mar. 24, 2015) (declining request by party opposing a § 1782 application to disregard affidavit filed in support of the application by petitioner's counsel in the underlying foreign action). Accordingly, because Respondent has failed to demonstrate that the Abrusio Declaration is improper, it is recommended that Respondent's motion to strike is **DENIED** as to the Abrusio Declaration.

## III.    CONCLUSION AND ORDER

In light of the foregoing, and the Court having considered this matter pursuant to Fed. R. Civ. P. 78;

**IT IS** on this 19th day of January, 2018,

**RECOMMENDED** that Petitioner's application for discovery pursuant to 28 U.S.C. § 1782 [Dkt. No. 2] be **DENIED**; and it is further

**ORDERED** that Petitioner's motion to seal and proceed anonymously [Dkt. No. 1] is **DENIED**; and it is further

**ORDERED** that all filings in this matter currently maintained under seal shall continue to be sealed for fourteen (14) days from the date of this Order to allow the parties to file a motion or motions to seal specific documents in this matter; and it is further

**RECOMMENDED** that Respondent's motion to strike [Dkt. No. 16] be **GRANTED in part and DENIED in part**; and it is further

**RECOMMENDED** that Respondent's motion to strike [Dkt. No. 16] be **GRANTED** as to Exhibit 1 [Dkt. No. 15-1]; and it is further

**RECOMMENDED** that Respondent's motion to strike [Dkt. No. 16] be **DENIED** as to the Abrusio Declaration [Dkt. No. 15-2]; and it is further

**ORDERED** that pursuant to L. Civ. R. 72.1 and Fed. R. Civ. P. 72, objections to this Report and Recommendation shall be filed within fourteen (14) days after service hereof. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  The Clerk of Court is directed to serve the parties with electronic notice upon filing this Report and Recommendation; and it is further

**ORDERED** that this Opinion and Order shall remain under seal for fourteen days (14) during which time the parties may file a motion or motions to seal portions of this Report and Recommendation pursuant to Local Civil Rule 5.3.

s/James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**