# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE APPLICATION FOR DISCOVERY FOR USE IN FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782** | Civ. No. 17-4269-KM-JBC<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge James B. Clark, III, (DE 25) regarding (1) the application (DE 2) of petitioner Michael Page do Brasil Ltda. ("Page") pursuant to 28 U.S.C. § 1782 for judicial assistance in obtaining evidence located in the United States from respondent Robert Half International Inc. ("International"); (2) Page's request to seal all docket entries that disclose its identity and to permit the parties to use pseudonyms (DE 1); and (3) International's motion to strike certain exhibits that were attached to Page's judicial assistance application (DE 16).

The R&R of the Magistrate Judge disposed of the second and third applications thus: Page's application to seal and proceed anonymously was denied (DE 1); and International's motion to strike was granted in part and denied in part (DE 16). As to those two rulings, neither party has filed an objection. This Court, having conducted an independent review of the recommendation, adopts and affirms the Magistrate Judge's R&R.

The R&R also recommended denial of the first application, Page's application for judicial assistance in obtaining discovery in the United States pursuant to § 1782. As to that portion of the R&R, Page has filed a timely objection. The remainder of this Opinion is confined to that issue.

Overall, I adopt and affirm the R&R and endorse the Magistrate Judge's thorough and well-reasoned opinion. In particular, I agree with the Magistrate

1

Judge's analysis of the first, third, and fourth discretionary factors that guide the § 1782 analysis under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004). I disagree with the Magistrate Judge's resolution of the second factor, finding that weight must be given to Brazil's signatory status to the Hague Convention. *In re O'Keeffe*, 646 F. App'x 263, 265-66 (3d Cir. 2016). Nevertheless, like the Magistrate Judge, I find that the balance of all four factors mandates the denial of Page's application. This denial is without prejudice to a subsequent application, in the event, for example, that the circumstances change in the underlying Brazilian action.

## I.   **Background**[1]

Page is an employment recruitment firm, located in São Paulo, which places candidates with employer-clients throughout Brazil. (App. at ¶11). International is a professional recruitment firm based in the United States that operates internationally. (App. at ¶12). International's subsidiary, Robert Half Trabalho Temporário Ltda. ("Robert Half Brazil") operates in Brazil and is Page's direct competitor. (App. at ¶¶3, 13).[2]

Page alleges that Alexandre Arima, an employee who had unrestricted access to Page's network and servers, left Page to work for Robert Half Brazil in December of 2007. (App. at ¶¶19-20). Sometime between 2006 and 2008, Arima allegedly planted malware that manipulated the source code of Page's

---

[1]   I cite to certain key items in the record as follows:

| | | |
|---|---|---|
| DE __ | = | Docket entry number in this case; |
| App. | = | Page's application for discovery under 28 U.S.C. § 1782 (DE 2); |
| Obj. | = | Page's objections to the Report and Recommendation (DE 29); |
| Oppo. | = | International's opposition to Page's objections (DE 34); |
| Reply | = | Page's reply (DE 35). |

[2]   Page indicates that it is unsure of the "precise nature of the business relationship between Respondent and [its] subsidiary," except that Robert Half Brazil's computers were configured as graphic terminal servers that connected to International's servers in the United States. (App. ¶ 14).

website and permitted third parties to gain access to Page's confidential business information. (App. ¶¶19-24; Obj. at 5).

Page learned of the malware when Juan Pablo Correa Santa, an employee who had formerly been employed by Robert Half Brazil, told Page that Robert Half Brazil employees had "accessed confidential information through Petitioner's website by using special computer command codes." (App. at ¶21). Santa disclosed that the "confidential identities" of Page's clients were discovered, allowing Robert Half Brazil to target those clients and "offer competing services." (Id.).

Page commenced an internal investigation to determine whether its website had been compromised. (App. at ¶22). That investigation determined that someone had altered the source code of Page's website in a manner that permitted third parties to access the identities of Page's clients through certain computer command codes. (App. at ¶¶22, 24). The investigation further revealed "an unusually high number of visits to its website originating from multiple IP addresses registered to Respondent," i.e., Robert Half Brazil. (App. at ¶24). Those visits, the investigation determined, "targeted and consulted webpages where [Page's] confidential data was being improperly revealed." (App. at ¶25).

Page contracted with an outside computer forensics firm, which ultimately confirmed its internal findings. (App. at ¶24). The computer forensics firm determined that the visits originating from IP addresses owned by Robert Half Brazil had targeted webpages where Page's confidential data was stored. (App. at ¶25).

In January 2009, Page commenced a legal proceeding against Robert Half Brazil and Arima in São, Paulo Brazil for the "anticipatory production of evidence" (the "Search and Seizure Action"). (DE 2-7; App. at ¶27). Page sought the procurement of evidence that would substantiate its claims against Robert Half Brazil. (Id.).

The Brazilian court appointed an independent information technology expert, Dr. Raul Spiguel, to seize and evaluate computers and other devices

3

that belonged to Robert Half Brazil and Arima. (DE 2-5; App. at ¶28). On February 6, 2009, investigators executed warrants at the offices of Robert Half Brazil and at Arima's home. (DE 2-5, at 4-5). At the offices, investigators located seventy-two computers and two servers. (DE 2-5, at 6). Investigators accessed the computers, and determined that the computers were connected to the network and were configured to connect with servers located at the parent company, International, in the United States. (DE 2-5, at 8). This particular configuration eliminated the use of local hard drives; all the data and user files were recorded on hard drives located on the servers in the United States. (DE 2-5, at 8, 10). As a result, this data was not accessible to the expert. (*Id.*). The investigators were nonetheless able to determine that the computers at Robert Half Brazil connected to the internet using two IP addresses that were identified by Page in its Search and Seizure complaint. (DE 2-5, at 9).

After completing their search of the office computers, investigators accessed and searched Arima's laptop computer. (DE 2-5, at 10). Arima's laptop, too, was configured to store certain data on International's main server located in the United States, but Arima also utilized a local hard drive. (DE 2-5, at 10-12). As a result, investigators were able to copy Arima's data and remote files that were located on the main server in the U.S. (DE 2-5, at 12). In addition to Arima's laptop, the investigators seized a second laptop that was found in the company director's room. At Arima's home, investigators seized a desktop computer and external hard drive, as well as a laptop and internal hard drive. (DE 2-5, at 17).

After the searches were completed, the Brazilian court appointed a second expert, Dr. Dante Grasso Junior, who examined the data that was collected during the search. (App. at ¶33; DE 2-6). Dr. Grasso prepared a report, dated March 13, 2013. (App. at ¶34; DE 2-6). The report concluded that Arima visited Page's website and reviewed a job advertisement. (DE 2-6, at 26, 31-32, 36-37). It further noted that after reviewing the job advertisement, Arima searched for "SGD Brasil" and visited that company's website. (DE 2-6 at 27-32). This, asserts Page, was a search for one of Page's non-public,

4

confidential clients. (Obj. at 9). Nonetheless, Dr. Grasso's report did not conclude that that search improperly attained confidential information. (*See* DE 2-6). The expert also concluded that there was "no truly positive evidence" that Page or Arima had installed the malware or accessed confidential information. (DE 2-6, at 60-61). The Brazilian Court accepted Dr. Grasso's findings, and the Search and Seizure Action was dismissed on August 17, 2015. (DE 2-7).

On May 18, 2017, Page commenced a second action in São Paulo, Brazil against Arima, Robert Half Brazil, and International. This action asserted claims for unfair competition and customer misuse based upon allegations similar to those set forth in the earlier Search and Seizure Action. (DE 2-2).[3] On June 13, 2017, Page filed an application pursuant to 28 U.S.C. § 1782 with this Court, seeking discovery for its second action. (DE 2-1).

On January 19, 2018, the Magistrate Judge issued his Report and Recommendation, which addressed (1) Page's application pursuant to 28 U.S.C. § 1782 to serve discovery requests on International (DE 10); (2) Page's motion to seal certain documents and to proceed anonymously (DE 1); and (3) International's motion to strike certain exhibits that were attached to Page's reply brief in support of its application for discovery (DE 16). The Magistrate Judge denied Page's application for discovery and its motion to seal and proceed anonymously, but granted in part and denied in part International's motion to strike. (DE 25).

On February 20, 2018, Page filed objections to the Report and Recommendation. (DE 29). Page's objections are limited to its application for judicial assistance in obtaining discovery in the United States under 28 U.S.C. § 1782.

---

[3]     International had not been named as a defendant in the earlier Search and Seizure Action. (Oppo. at 4). In the second Brazilian action, Page asserts that International is liable because of its association with Robert Half Brazil and because the "technological structure" of Robert Half Brazil warrants its inclusion in the suit as a "passive" defendant. (DE 2-2, at fls. 405).

## II. Legal Standard

A Magistrate Judge's authority to "hear and determine" matters is derived from 28 U.S.C. § 636(b)(1).[4] *See EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (citation omitted). The standard of review of a Magistrate Judge's decision is determined by whether the ruling is dispositive or non-dispositive. If the ruling is dispositive, the Magistrate Judge may enter a report and recommendation, which this Court reviews *de novo*. Fed. R. Civ. P. 72 (b). If non-dispositive, the Magistrate Judge is to enter an order, which the District Court reviews for clear error. Fed. R. Civ. P. 72 (a).

Courts are divided as to whether decisions on discovery applications under § 1782 are dispositive or non-dispositive. *See In re Macquarie Bank Ltd.*, 2015 U.S. Dist. LEXIS 72544, at *6 (D. Nev. May 28, 2015) (collecting cases and noting that "most courts have found that ruling on a § 1782 motion is a non-dispositive matter within the province of a magistrate judge's authority"), *reconsideration denied*, 2015 U.S. Dist. LEXIS 155186 (D. Nev. Nov. 17, 2015). Courts that have held § 1782 decisions are non-dispositive have focused on the Magistrate Judges' core role in resolving procedural and discovery disputes. *See, e.g, In re Macquarie Bank Ltd.*, 2015 U.S. Dist. LEXIS 72544, at *7. On the other hand, the sole relief sought in a standalone § 1782 proceeding is the obtaining of discovery, so in that sense, a Magistrate Judge's ruling either way would dispose of the entire case. *See* 12 Wright & Miller, *Federal Practice and*

---

[4]     That statute lists certain matters that are not within a magistrate judge's authority to "hear and determine":

> [A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the [magistrate judge's] order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1).

*Procedure* § 3068.2 (3d ed. 2014) ("The sole purpose of the [§ 1782] proceeding is to obtain discovery, and accordingly, a motion to compel such discovery is a final, dispositive matter.").[5]

Neither party in this case directly addresses the standard of review. The Magistrate Judge's decision is styled as a report and recommendation, however, and both parties seem to assume that the standard of review is *de novo*. (Obj. at 10; Oppo. at 8). Out of caution, then, and to avoid unfair surprise, I review the matter *de novo*. *See In re Cohen*, 2016 U.S. Dist. LEXIS 169622, at *7 n.3 (E.D.N.Y. Dec. 6, 2016) (treating § 1782 application as dispositive "in an abundance of caution," without resolving the "unsettled question" of whether motions under § 1782 are dispositive), *adopting R&R*, 2016 U.S. Dist. LEXIS 177418 (E.D.N.Y. Dec. 22, 2016).

## III.  Discussion

The purpose of 28 U.S.C. § 1782[6] is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro*

---

[5]    *See also Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) (noting that § 1782 application for conducting discovery in foreign proceeding was referred to magistrate judge as non-case-dispositive discovery matter, and appellate court reviewed magistrate judge's rulings under abuse of discretion standard without discussing issue of magistrate judge's authority); *In re Clerici,* 481 F.3d 1324, 1331 (11th Cir. 2007) (standard of review for discovery ordered under § 1782 "is identical to that used in reviewing the district court's ordinary discovery rulings"), *cert. denied,* 552 U.S. 1140, 128 S. Ct. 1063, 169 L. Ed. 2d 807 (2008); *but see Phillips v. Beierwaltes,* 466 F.3d 1217, 1221-22 (10th Cir. 2006) (questioning whether motions for discovery in aid of foreign litigation under § 1782 could be characterized as non-dispositive matters).

[6]    Section 1782 provides, in relevant part, as follows:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the

*Devices, Inc.*, 542 U.S. 241, 247, 124 S. Ct. 2466 (2004). "Congress enacted 1782 to further the following goals: facilitating the conduct of litigation in foreign tribunals, improving international cooperation in litigation, and putting the United States into the leadership position among world nations." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (internal citations omitted).

"However, these goals do not in turn mean that a party to foreign litigation is entitled to unbridled and unlimited discovery under the statute." *Id.* "Section 1782 vests district courts with discretion to grant, limit or deny discovery . . . . [A] district court may refuse to grant a discovery request, or may impose various conditions and protective orders attendant to the production of requested documents." *Id.*

In deciding whether to grant a § 1782 application for the production of discovery for use in a foreign tribunal, the Court (1) determines whether the statutory requirements are met; and then (2) evaluates whether to exercise its discretion to grant the application. *In re O'Keeffe*, 646 F. App'x 263, 265-66 (3d Cir. 2016).

The initial statutory prerequisites to § 1782 relief are as follows:

> (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998) (citing *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)). Here, the Magistrate Judge determined that Page's application satisfied the statutory prerequisites. (DE 25, at 6 (concluding that

---

> document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782 (a).

(1) International is a Delaware Corporation with eight offices in New Jersey; (2) the discovery was sought for use in the second Brazilian action; and (3) Page, as a party to the second Brazilian action, is an interested party)). These conclusions are clearly correct, and neither party objects to them.

The second step, and the one at issue here, requires the analysis of four discretionary "*Intel* factors." Even if a court is authorized to grant discovery under § 1782, it is not required to do so. *Intel*, 542 U.S. at 264 (providing that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." (citation omitted)). A discovery request may be denied on a discretionary basis if the relevant factors do not weigh in favor of it. A court acts within its discretion only if it "fashions its order in accordance with the 'twin aims' of § 1782, [1] 'providing efficient means of assistance to participants in international litigation in our federal' courts and [2] encouraging foreign countries by example to provide similar means of assistance to our courts.'" *In re Esses*, 101 F.3d at 876 (quoting *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir.), *cert. denied*, 506 U.S. 861, 113 S. Ct. 179, 121 L. Ed. 2d 125 (1992)).

In *Intel*, the Supreme Court identified the considerations that should guide a court considering whether to exercise its discretion to grant a § 1782(a) request. The court must consider four factors: (1) whether the person from whom discovery is sought is a participant in a foreign proceeding; (2) the nature of the foreign litigation, the character of the proceedings already underway, and the foreign country's receptivity to court assistance from the U.S.; (3) whether the petitioner is attempting to circumvent proof-gathering restrictions in foreign or American courts; and (4) whether the request for discovery is unduly intrusive or overly broad. *Intel*, 542 U.S. at 264-65; *see Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010) (citation omitted).

Page takes issue with the Magistrate Judge's analysis of each of the four *Intel* factors. I address them in turn.

9

### A. First *Intel* Factor

The first *Intel* factor focuses on whether the person from whom discovery is sought is a participant in the foreign proceeding. *Intel*, 542 U.S. at 264-65; *see Esschem, Inc.*, 390 F. App'x at 91. Although International is indisputably a party to the action in Brazil, the Magistrate Judge ultimately determined that this factor was neutral. (DE 25, at 10).

"[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid is generally not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." 542 U.S. at 264. When the respondent is a participant in the foreign proceeding, § 1782 discovery in the United States is less critical, "because a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Intel*, 542 U.S. at 264; *see also Esschem, Inc.*, 390 F. App'x at 91 (recognizing that first factor requires court to determine whether discovery sought is "within foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782").

Page does not dispute the essence of the first *Intel* factor: that International, as a defendant, is a "participant" in the underlying Brazilian action or that the Brazilian Court has jurisdiction over International. As it did before the Magistrate Judge, Page contends that this factor is not meaningful because the second Brazilian action for damages does not provide a mechanism through which Page can obtain "U.S.-style" discovery. (DE 25, at 8; Obj. at 14). It further argues that the Magistrate Judge incorrectly "refus[ed] to undertake a meaningful analysis of Brazilian law" to determine that such discovery was unavailable in the Brazilian action. (Obj. at 15).

The parties have submitted competing affidavits from Brazilian legal experts as to whether Page, in the Brazilian action, can compel production of discovery materials that are located in the United States. (*See* DE 23-1; DE 15-2 (declaring that Brazilian Action "does not provide the parties with a mechanism through which Petitioner can obtain from Respondent discovery

that is located in the United States."); DE 10-2 (stating that "the Brazilian Civil Procedure Code now permits parties to initiate a preliminary evidence action that could render Petitioner's application for discovery in the United States unnecessary." (citing CPC, Art. 381, III))).

I do not say that these considerations are irrelevant, but it is necessary to refocus on the actual wording of the first *Intel* factor. As the Magistrate Judge noted, Page did not contend that International was not a party to the Brazilian proceedings, that the Brazilian court lacked jurisdiction over International, or that the Brazilian court could not, at least as a general matter, compel discovery from International. (DE 25, at 9 (citing *In re Qualcomm Inc.,* 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (finding first factor neutral where petitioner contended that it was unable to compel production of evidence, but it was unclear whether foreign tribunal itself could compel requested discovery))). As *Intel* makes clear, the focus of the first factor is whether the foreign tribunal has the necessary authority over an entity; in general, it seems that it should be satisfied by a showing that the entity was an actual party to the foreign litigation. *See* 542 U.S. at 264 (providing, under first factor, that if "foreign tribunal has jurisdiction over those appearing before it, [the foreign tribunal] can itself order them to produce evidence."). Page has not offered any conclusive evidence that the Brazilian tribunal, despite having jurisdiction over International, cannot order it to produce the requested discovery.

The Magistrate Judge properly refrained from undertaking what Page calls "a meaningful analysis of Brazilian law." (Obj. at 15). By that, Page seems to mean that the Magistrate Judge was required to step into the shoes of the Brazilian tribunal and render discovery rulings under Brazilian law. I disagree. The Second Circuit has persuasively held that such an undertaking is not required or appropriate on a § 1782 application:

> The record reveals that this litigation became a battle-by-affidavit of international legal experts, and resulted in the district court's admittedly "superficial" ruling on [foreign] law. . . . We think that it

11

is unwise -- as well as in tension with the aims of section 1782 --
for district judges to try to glean the accepted practices and
attitudes of other nations from what are likely to be conflicting
and, perhaps, biased interpretations of foreign law. . . . We do not
read the statute to condone speculative forays into legal territories
unfamiliar to federal judges. Such a costly, time-consuming, and
inherently unreliable method of deciding section 1782 requests
cannot possibly promote the "twin aims" of the statute.

*In re Euromepa S.A.*, 51 F.3d 1095, 1099-100 (2d Cir. 1995);[7] *see also John Deere, Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 n.3 (3d Cir. 1985) (cautioning district courts from "predict[ing] or constru[ing] the procedural or substantive law of the foreign jurisdiction" during § 1782 application). Relying on *In re Qualcomm Inc.*, 162 F. Supp. 3d at 1040, where the United States District Court for the Northern District of California ascribed a "neutral" rating to the first factor when it was presented with competing expert affidavits, the Magistrate Judge similarly here ascribed a neutral rating. Page has not presented any new arguments warranting a different finding.[8]

Page further contends that the Magistrate Judge "conflated" this factor with the third *Intel* factor (whether Page's attempt to obtain discovery through

---

[7]   *Euromepa* was embraced by the U.S. Court of Appeals for the Third Circuit. *See In re O'Keeffe*, 646 F. App'x at 266 (discussed further *infra*). It is true that *Euromepa* was decided before *Intel,* but I do not believe its authority as to the relevant issue has been undermined. When *Euromepa* was decided, one statutory factor was interpreted to require that the discovery sought be for an actually pending or imminent proceeding before a foreign tribunal. *Intel* rejected that view, requiring only that a dispositive ruling be "within reasonable contemplation." *Intel*, 542 U.S. at 259. This reinterpretation of one of the statutory factors does not change the analysis of the discretionary factors as announced in *Euromepa*.

[8]   Page, perhaps giving short shrift to the conflicts in the affidavits, simply asserts that its expert is correct. (*See, e.g.*, Reply at 3 ("Respondent's expert testimony . . . is simply incorrect and ignores Brazilian law cited by Petitioner's expert[.]")). The Magistrate Judge was not required to credit Page's expert over that of International's expert, however, and indeed was not required to resolve such a battle of the experts at all, except perhaps in the clearest of cases. *In re Euromepa S.A.*, 51 F.3d at 1099-100.

Page's attempt to distinguish *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, is unpersuasive. (Obj. at 15). There, it was unclear whether the foreign tribunal could compel discovery from non-parties. (*Id.*). Here, it is not disputed that International is a party to the Brazilian proceeding.

12

the § 1782 process was an attempt to side-step Brazilian procedures). (Obj. at 16). I find no basis for that argument in the Magistrate Judge's decision. Addressing Page's argument that the Brazilian process may not afford Page the opportunity to obtain "U.S.-style" discovery, the Magistrate Judge expressed a concern which he explicitly tied to the language of the third factor: "[I]f the procedural posture of the [u]nderlying [a]ction does not contemplate an exchange of discovery between the parties, then an attempt to gain such discovery here could be seen as an attempt to sidestep the procedure of the Brazilian court." (DE 25, at 9). Indeed, it may be Page, not the Magistrate Judge, that is mixing and matching disparate elements of factors one and three, attempting to transform factor one into a requirement that the foreign tribunal be proven to offer "U.S.-style" discovery.

International is indisputably subject to the power of the Brazilian court. The expert evidence on foreign law, to the extent relevant, is in conflict. I affirm the reasoning of the Magistrate Judge that the first factor is neutral, and find that it may even tip toward International.[9]

### B. Second *Intel* Factor

The Magistrate Judge gave a neutral rating to the second *Intel* factor, which is premised on policies of international comity and state sovereignty. As to this factor, I supplement the Magistrate Judge's reasoning, and find that this second factor weighs in Page's favor.

Under the second discretionary factor, "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the

---

[9]    International also advances an argument that sounds in laches, although it is not labeled as such. (Oppo. at 12-13). What International is referring to is Page's delay in bringing the second action. The first Brazilian expert issued his report in the Search and Seizure action, which is dated February 16, 2009. In that report, the expert noted that servers were located in the United States, placing Page on notice. Nonetheless, Page did not file this action until May 18, 2017, several years after it became aware of the location of certain evidence. Page counters that International is inappropriately advancing an exhaustion requirement. (Reply at 2-3). Without accepting that characterization, I find International's argument to be tangential to the facts properly considered under the first factor.

character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264; *see In re O'Keeffe*, 646 F. App'x at 266. Particularly where a foreign tribunal opposes such aid, granting discovery would undermine the spirit of comity underlying § 1782 by discouraging foreign tribunals from "heeding similar sovereignty concerns posited by our governmental authorities to foreign courts." *See In re Schmitz*, 259 F. Supp. 2d 294, 298 (S.D.N.Y. 2003) (citation omitted), *aff'd*, 376 F.3d 79 (2d Cir. 2004). By officiously granting a foreign party "U.S.-style" discovery denied by local law, the U.S. may undercut its own standing to obtain discovery that a foreign state would not otherwise require.

In evaluating a foreign tribunal's receptivity, the court considers "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1099-1100; *see also In re O'Keeffe*, 646 F. App'x at 266 (affirming district court's finding that second factor favored ordering discovery because evidence presented did not authoritatively establish that foreign tribunal would reject evidence). Examples of authoritative proof include "a forum country's judicial, executive or legislative declarations *that specifically address the use of evidence gathered under foreign procedures.*'" *Euromepa*, 51 F.3d at 1099-1100 (emphasis added). The Third Circuit has held that "the parties opposing discovery under section 1782 . . . bear the burden of proof on the receptiveness issue." *In re Chevron Corp.*, 633 F.3d 153, 162–63 (3d Cir. 2011).[10]

Page asserts that absent any definitive proof that a foreign tribunal would reject such discovery, Page is entitled to a "presumption" in favor of receptivity. (Obj. at 16, 18 (citing *In re Owl Shipping, LLC*, 2014 WL 5320192, at *3 (D.N.J. Oct. 17, 2014) (providing that party who applies for § 1782 aid

---

[10] *Intel* itself did not address "the question of whose burden it is to demonstrate receptivity or, for that matter, nonreceptivity of a foreign tribunal." *In re Chevron Corp.*, 762 F. Supp. 2d 242, 252 (D. Mass. 2010).

enjoys "a presumption in favor of foreign tribunal receptivity that can be offset by reliable evidence that the tribunal would reject the evidence.")). Page also contends that (1) "both parties' experts confirmed that applicable Brazilian rules of civil procedure permit 'borrowed evidence' obtained abroad;" and (2) that Brazil is a signatory to the Hague Evidence Convention, and thus is likely receptive to American judicial assistance. (Obj. at 17).

For the proposition that there is a "presumption" of receptivity, Page cites *In re Owl Shipping, LLC,* 2014 WL 5320192, at *3. *Owl Shipping* cites *Gov't of Ghana v. ProEnergy Servs. LLC,* 2011 WL 2652755, at *4 (W.D. Mo. June 6, 2011) (stating that parties who seek § 1782 aid enjoy "a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence.")). And *ProEnergy* relies in turn on language in *Euromepa* requiring "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." 51 F.3d at 1099-1100. Whether or not this rises to the level of a legal "presumption," it certainly places the burden of proof on the party who claims that the foreign tribunal is hostile to the reception of evidence from abroad, and specifies the kind of evidence that would be required to demonstrate nonreceptivity. I am confirmed in that impression by the Third Circuit's discussion of evidence relevant to the second factor:

> [D]istrict courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application. In determining whether the foreign tribunal would take offense, the district court would be free, in the exercise of its discretion to consider any materials, typically statutes or case law from the foreign jurisdiction, that may be presented by the parties.

*In re Keeffee,* 646 Fed. App'x at 266 n.5 (quoting *In re Bayer AG,* 146 F.3d at 195). *See also In re Chevron Corp.,* 633 F.3d at 162–63.

Here, the parties have presented conflicting expert declarations with citations to Brazilian Civil Procedure Code ("CPC"). Under *Euromepa,* the CPC would properly be considered authoritative in evaluating the second factor.

Only Page actually attaches a section of the Brazilian CPC, but that provision is less than clear on the subject of discovery obtained from a foreign tribunal when there is an action pending before the Brazilian court. (*See* DE 23-1, at 21 (CPC, Art. 372 (providing that Brazilian judge may accept evidence produced from another case))). The provision does not specifically touch on the method or circumstances under which discovery may be obtained from a foreign tribunal. *See Euromepa*, 51 F.3d at 1099-1100 (defining authoritative proof as "forum country's judicial, executive or legislative declarations that *specifically address the use of evidence gathered under foreign procedures*." (emphasis added)). At any rate, it stops short of expressing any overt resistance or hostility to evidence gathered abroad.

International's expert, relying on Article 381 of the CPC, asserts that the Brazilian court retains exclusive jurisdiction over the discovery process in a pending matter. When discovery is located abroad, there is an "evidence-gathering process" that is coordinated with the Brazilian Court. Prior to seeking evidence abroad, a party is required to request and obtain an exception from this process. International's expert has further declared that the Brazilian court would likely grant such an exception only if the Brazilian court found itself unable to gather or compel the discovery at issue. CPC 381 seems to directly address the Brazilian court's receptivity to evidence obtained from abroad; however, the court's analysis is impaired somewhat by International's failure to attach a copy of Article 381 for inspection.

Recognizing these conflicting declarations and interpretations regarding the Brazilian CPC, the Magistrate Judge ascribed a neutral rating to the second factor. So far, I would agree.

I think that the neutral rating is tipped, however, by the effect of international treaties facilitating cooperation. Page is correct that the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from its assent to treaties that promote such cooperation. *See In re O'Keeffe*, 646 F. App'x at 267 (finding that "Hong Kong is a signatory to the Hague

Evidence Convention, and thus the Hong Kong court is likely 'receptive to American judicial assistance.'") (citing *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("Venezuela has indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation.")). Page has asserted, and International does not dispute, that Brazil is a party to the Hague Evidence Convention, which governs the taking of evidence outside a country's borders for proceedings within that country.

In *In re O'Keeffe*, the U.S. Court of Appeals for the Third Circuit assessed the second factor based on a record similar to that here. *See* 646 F. App'x at 266–68. There, as here, the parties submitted clashing affidavits regarding the discovery law applicable to the foreign tribunal (Hong Kong). Citing *Euromepa*, the Third Circuit supported the trial court's perception that "district courts are discouraged from engaging in the interpretation of foreign law when conducting a Section 1782 analysis," at least in cases where the evidence was "conflicting" and not the subject of "authoritative proof." *Id.* at 267. As in this case, the parties' conflicting expert declarations did not constitute the kind of "authoritative" proof that would permit the court to rule without enmeshing itself in complex determinations of foreign law. *Id.*

The second factor, said *O'Keeffe*, is based not on the admissibility of particular kinds of evidence, but rather on a foreign nation's *general* receptivity to U.S. judicial assistance. *Id.* (citing *Intel*, 542 U.S. at 264). Hence the Third Circuit found it highly relevant that Hong Kong, like Brazil, was a signatory to the Hague Convention. *Id.* That circumstance alone, *O'Keefe* held, "indicates that Hong Kong's courts are receptive to American judicial assistance." *Id.* At least in the absence of strong countervailing evidence, it was therefore proper for the district court, within its discretion, to find that the second factor weighed in favor of providing the discovery.

The key factors identified *In re O'Keeffe*, then, were conflicting expert affidavits, lack of authoritative evidence, and the existence of a reciprocal

agreement, the Hague Convention, that implies receptivity. Those factors read directly onto this case. I therefore follow the Court of Appeals' lead and determine that the second factor weighs in favor of Page.[11]

### C. Third *Intel* Factor

The Magistrate Judge found that the third *Intel* factor weighed against granting the application, and I agree.

The third discretionary factor looks at "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265; *O'Keeffe*, 646 F. App'x at 266. While a § 1782 applicant need not seek discovery from the foreign tribunal first or exhaust all possible avenues before applying for § 1782 aid, "a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Joint Stock Co. Raiffeinsenbank*, 2016 U.S. Dist. LEXIS 152090, at *17-18 (N.D. Cal. Nov. 2, 2016) (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)); *see O'Keeffe*, 646 F. App'x at 266; *In re Cal. State Teachers' Ret. Sys.*, 2017 U.S. Dist. LEXIS 50926, at *9 (D.N.J. Apr. 3, 2017). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *In re Gilead Pharmasset LLC*, 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (quotation omitted).

The third discretionary factor is intended to discourage a party from making an "end-run around foreign proof-gathering restrictions or other policies of a foreign country." *See In Re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006). "[D]istrict courts must be alert for potential abuses that would warrant a denial of an application to be allowed to take such discovery. One abuse would be for a party to seek discovery in a federal district court that

---

[11] I do not accept Page's argument, by the way, that the Magistrate Judge imposed a "heightened" standard on Page in resolving this factor. (Obj. at 18). He was simply unconvinced by the Page's evidence, viewed in isolation from the Hague Convention.

it could obtain in the foreign jurisdiction, thus gratuitously forcing his opponent to proceed in two separate court systems; the inference would be that the party seeking U.S. discovery was trying to harass his opponent." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011). Thus the district court need not, but "may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction." *In Re Babcock Borsig Ag*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008).

Page selectively points to a few sentences in the R&R and contends that the Magistrate Judge improperly imposed a quasi-exhaustion requirement that would require § 1782 applicants to first seek discovery in the foreign proceeding before applying for § 1782 aid. (Obj. at 20-21). The criticism is not well-taken. The R&R contains, not a rigid "exhaustion" requirement (which would be erroneous), but a multifactor, discretionary consideration of the significance of Page's immediate resort to § 1782 proceedings (which is permissible).

I agree with Page that this case does not present the most blatant bad-faith scenario. This is not a case, for example, in which foreign law protected a party from certain forms of disclosure, and that party's frustrated adversary sought it here by means of § 1782. Still, I do not think that proof of skulduggery is required; a party's failure to invoke local discovery procedures remains significant, and may be considered. Concerns with the circumvention of foreign procedures—and the structuring of discovery to avoid such conflicts when possible—rightly bear on the court's exercise of discretion.

Page presented an expert affidavit, but no evidence, that the Brazilian courts would be unable to obtain requested discovery from International. (DE 25, at 13). Page filed its application for "expansive" § 1782 discovery less than one month after filing its action in Brazil, before it had even served the defendants with process or made a single request for ordinary discovery. That preemptive approach is not barred by the statute, but it does cut against the goals of comity and efficiency. (*See* DE 25, at 14). Because Brazilian discovery

procedures have not been tried, their efficacy in this case remains a matter of speculation. (*Id.*). On that score, the reasoning of the district court *In re Digitechnic* is apt:

> Digitechnic has not even tried to obtain any of the discovery sought here by way of French discovery tools. On this point, Digitechnic emphasizes that there is no 'exhaustion' requirement in § 1782. While this is correct, there is nevertheless no reason that this Court should overlook Digitechnic's failure to attempt any discovery measures in France in making the discretionary decision now before it.

2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) (emphasis omitted)).

International is currently a party to the Brazilian action; there was no solid evidence that Page would be unable to obtain the necessary discovery in that foreign action; and yet Page, before even serving the defendants or seeking discovery in Brazil, immediately resorted to an expansive § 1782 application.[12] Those factors, and not some imagined exhaustion requirement, are what motivated the Magistrate Judge's resolution of factor three. (*See* DE 25 ("the Court is left with the impression that there must be some 'reason that [the petitioner] is seeking the information in [the United States] rather than in [the foreign tribunal]' . . . because rational actors do not needlessly increase their own litigation costs' by pursuing discovery via a § 1782 application which is in the possession of a party to the foreign action and which has not been shown to be unobtainable by the foreign tribunal.'" (quoting *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, at *7 (E.D. Mich. Sept. 25, 2012))).[13]

---

[12]     On May 18, 2017, Page commenced the underlying action in Brazil; on June 13, 2017, Page filed its § 1782 application with this Court. (DE 2-1, -2). Page contends that, as the proponent of discovery, it was simply trying to get evidence as quickly as possible, and that its § 1782 application was filed before service because it has limited control over the timing of service. (Obj. at 22-23). That latter contention is unsupported by evidence. At any rate, subjective motives are of tangential relevance if a party's conduct is in fact a circumvention of local procedures.

[13]     *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, as Page contends, is distinguishable; there, the record showed that the discovery sought from the U.S. based parent company was also in the possession of the Brazilian subsidiary named as a party in the action.

Accordingly, I adopt the Magistrate Judge's reasoning, and hold that the third factor weighs against granting Page's § 1782 application.

### D. Fourth Factor

The fourth discretionary *Intel* factor asks whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Page seems to tacitly acknowledge as much, but suggests that the Magistrate Judge should have trimmed its broad discovery requests. (Obj. at 25, 30).

"Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45. Thus, assessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules." *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016); *see also Bayer AG*, 173 F.3d at 192 (providing that "Federal Rules of Civil Procedure . . . are incorporated by reference into 28 U.S.C. § 1782"). Thus, the requested discovery must be "'reasonably calculated to lead to the discovery of admissible evidence' pursuant to Rule 26," and must be designed "to avoid imposing undue burden or expense on a person subject to the subpoena" under Rule 45. *Glob. Energy Horizons Corp.*, 647 F. App'x at 86.

"When a party chooses to serve overly broad discovery, it runs the risk that the discovery will be denied outright without an opportunity to narrow it." *In re Macquarie Bank Ltd.*, 2015 U.S. Dist. LEXIS 72544, 2015 WL 3439103, *9 (D. Nev. May 28, 2015), *reconsideration denied*, 2015 U.S. Dist. LEXIS 155186 (D. Nev. Nov. 17, 2015) (dismissing argument that overbroad § 1782 request had to be trimmed rather than rejected outright); *see Intel*, 542 U.S. at 265 (noting that overly burdensome requests "*may* be rejected or trimmed." (emphasis added)).

Page has presented no reason to disturb the findings of the R&R on this factor. The Magistrate Judge determined that Page's requests were impermissibly expansive. Upon review of the requests, I, too, find that they are not reasonably tailored or targeted.

As the Magistrate Judge recognized, Page overstepped from the get-go in its definition of terms. Thus the key term "Responsible Users" is defined as "Any person(s) or thing(s) . . . who accessed or attempted to access Michael Page's website . . . through Robert Half IP addresses from on or about January 1, 2008 to on or about February 28, 2009." (DE 2-1, at 1, ¶6). This definition would encompass all users of Page's website, even for purposes unrelated to Page's claims.

Page submitted "Schedule A" requests pursuant to Fed. R. Civ. P. 30(b) for corporate designees on sixteen different topics, including the following: the browsing history of "responsible users;" the "use" (an undefined term) of certain IP addresses from the relevant period (defined as January 1, 2008 through February 28, 2009); the identity and conduct of the persons who accessed Page's website; responsible users' use of virtual private networks (VPNs); three specific employees entire browsing history during the relevant period; the electronic devices used to access the Page website by responsible users; electronic communications (an undefined term) concerning information obtained by Responsible Users from the Page website; as well as various policies related to document retention and electronic storage. (DE 2-1, at 5-6).

Schedule B sought the production of fourteen categories of documents relating to the sixteen deposition topics set forth in Schedule A. (DE 2-1, at 7-8). The document requests sought the production of documents "sufficient to identify all Responsible Users," including their "complete personal data records," as well as the Responsible Users' entire browsing histories. (DE 2-1, at 7). This request, which again by its definition encompasses *all* persons who accessed Page's website, would require International, a multinational company, to review the internet data and "browsing history from almost a decade ago of *every person* or 'thing' over a year-long period to determine whether any of those persons or things accessed [Page's] website." (DE 25, at 18).[14]

---

[14]    In addition, International indicated that it is unable to complete this request because it no longer possesses the internet browsing history of its employees from almost a decade ago. (*Id.*).

Page also made narrower requests relating to three specific employees. Even these, however, were not tailored to the issues in the underlying action. The Magistrate Judge determined that these requests would require International to manually review over two million archived emails. (DE 10-3). Another example of overreach is document request number 12, which seeks every document related to Arima's employment relationship with Robert Half, including any communication between Arima and any other Robert Half employee, without limitation.

Based on those examples and others, the Magistrate Judge aptly concluded that the subpoena was massively overbroad:

> [T]he Subpoena's extensive and indiscriminate requests appear to be a fishing expedition which would cause Respondent to suffer a significant burden not justified by the needs of this case at the present juncture. The Search and Seizure Action concluded without any finding of wrongdoing by Respondent and the mere fact that that the conclusion of the Search and Seizure Action noted the inaccessibility of Respondent's data stored in the United States does not provide a reasonable justification for wholesale discovery into the personal information, internet browsing history and electronic communications of every Robert Half employee who may have accessed Petitioner's competing website almost a decade ago. This is especially true in light of Petitioner's failure to make any attempt to obtain discovery in the Underlying Action.

(DE 25, at 18).

On this factor, Page has not offered any arguments or evidence that were not proffered to and ably discussed by the Magistrate Judge. Page points to its own expert's certification that the burden was partially due to International's data collection and management techniques. (Obj. at 31). These requests, however, are facially and almost universally overbroad. In such a case, where nearly every request is unduly expansive, the Court is not required to take over the drafting. It is one thing to seek U.S. judicial assistance in serving a subpoena; it is another to make a kitchen-sink discovery request, without having tried local discovery (which might at least have narrowed it), and delegate responsibility to the U.S. tribunal to sort it out.

If the court's analysis of the other factors pointed strongly to granting Page's § 1782 request—*i.e.,* if nothing but overbreadth stood in the way—this factor might not carry the day. As it is, however, I adopt the Magistrate Judge's recommendation on factor four.

### E. Weighing

The four discretionary factors are weighed to determine whether an application under § 1742 should be granted. As to the second factor, I have disagreed with the R&R and found that this factor favors Page. The first factor is at best neutral, perhaps tipping to International. Both the third and fourth factors weigh in favor of denying the application.

Counting, however, is not weighing. I have considered not just the number of factors, but their significance under the particular circumstances of this case. In the discussion above, I have stated my reasons for finding it particularly significant that International is a party over which the Brazilian court has jurisdiction; that the showing of unavailability of discovery is at best equivocal; that the § 1782 request was filed before defendant had been served or local discovery had been tried; and that the discovery requests are unenforceably overbroad in any event.

Page, citing *Esschem, Inc.*, contends that an application under § 1782 cannot be denied simply by a finding that the third factor does not weigh in favor of granting the request. *See* 390 F. App'x at 92 (providing that "[t]he court must consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules; however, that consideration cannot serve as the sole determining factor because the statute does not reference a requirement of discoverability under the foreign country's laws." (citation omitted)). Neither the Magistrate Judge's reasoning nor mine, however, rests on any single factor.

### IV.   Conclusion

My balancing of the four *Intel* factors requires the denial of Page's § 1782 application. Subject to the above reservation as to the second factor, I adopt

the Magistrate Judge's R&R and affirm the denial of the § 1782 application, which is dismissed.

This dismissal is without prejudice to a subsequent application, should changed circumstances in the underlying Brazilian action merit a different weighing of the discretionary factors.

Dated:  January 10, 2019

**Kevin McNulty**
**United States District Judge**